**INSURANCE COMPANY OF NORTH AMERICA, a corporation, Plaintiff,**

v.

**BUTTE AERO SALES & SERVICE and James E. Purcell, Administrator of the Estate of Jack Elderkin, deceased, Defendants,**

Mary Hodge, also known as Mary Waunita Hodge, and Mary Hodge as Guardian ad Litem of Robert John Hodge, a minor, Intervening Defendants.

No. 1178.

United States District Court
D. Montana,
Butte Division.

July 12, 1965.

Weymouth Symmes, of Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for plaintiff.

James Purcell, of Meyer, Meyer & Purcell, Butte, Mont., for defendants.

Kendrick Smith, of Corette, Smith & Dean, Butte, Mont., for intervening defendants.

MURRAY, Chief Judge.

Alleging diversity of citizenship between itself and the defendants, plaintiff brought this action to have it declared that two policies of aircraft insurance which it had issued, one to Butte Aero Sales and Service, and one to Jack Elderkin, did not cover an airplane accident in which the insured plane was destroyed and Jack Elderkin and Robert C. Hodge lost their lives. In addition to insuring the plane itself, the policies contained passenger bodily injury liability insurance.

Plaintiff based its claim of noncoverage on an exclusion clause in the policies which in effect provided that the insurance would not apply while the aircraft was being operated "by any person not properly certificated by the required governmental authority for such operation, or in violation of such certificate during such operation". The complaint alleges that at the time the plane crashed, it was being operated by Jack Elderkin, and that Jack Elderkin at that time was not properly certificated by the required governmental authority to operate the aircraft, and, therefore, by virtue of the above exclusion, the policies did not cover said accident.

Because the intervening defendant, Mary Hodge, widow of the said Robert C. Hodge, was asserting a claim on behalf of herself and her minor child, for the alleged wrongful death of Robert C. Hodge against the Estate of Jack Elderkin, Deceased, and Butte Aero Sales and Service, and as such claimant was vitally interested in the coverage afforded by the policies, she was, without objection by the plaintiff or defendants, permitted to intervene in the action.

The defendants and intervening defendants opposed plaintiff's claim of noncoverage on the ground that the exclusion clause in the policies above referred to was modified by the provisions of Endorsement #2 attached to the policy issued to Jack Elderkin, and also upon the ground of waiver. Endorsement #2 on the Elderkin policy provides:

"In consideration of the premium charged, it is hereby understood and agreed that coverage provided by this policy while the aircraft is in flight shall not apply unless the pilot in command of the aircraft is JACK ELDERKIN or any other pilot who is properly certificated and rated for the flight and the aircraft, and has logged a minimum of 400 first pilot hours of which not less than 75 hours have been logged in retractable-gear aircraft and not less than 15 hours

have been logged in retractable-tricycle gear aircraft with no less than four places and 100 horsepower."

In addition the defendants denied that Jack Elderkin was piloting the plane at the time of the crash, and they also filed a counterclaim for a balance alleged to be due them for hull damage. Intervening defendants admitted the allegation of the complaint that Jack Elderkin was the pilot at the time of the accident.

After pretrial procedures were followed and a pretrial order was made in which many of the facts of the case were stipulated, the case was tried and submitted to a jury upon special interrogatories. During the course of the trial plaintiff's motion for directed verdict was granted insofar as the policy issued to Butte Aero Sales and Service [1] was concerned and ruling was reserved on plaintiff's motion for a directed verdict with respect to the policy issued to Jack Elderkin. The counterclaim of defendants was dismissed, and ruling was reserved on their motion for directed verdict. Intervening defendants also moved for a directed verdict, but their motion was withdrawn after the return of the special verdict.

The special interrogatories which were answered by the jury were two in number, "1. Was Jack Elderkin piloting the plane at the time of the accident?", which the jury answered in the affirmative; and "2. Did Jack Elderkin misrepresent to the Insurance Company of North America the type of Pilot Certificate he held?", to which the jury responded in the negative. Two additional interrogatories having to do with the alleged misrepresentation by Elderkin of his Pilot Certificate were also submitted, but because of the negative answer to Interrogatory 2, answers to the remaining two interrogatories were not required.

The plaintiff renewed its motion for directed verdict after trial under the provisions of Rule 50(b) of the Federal Rules of Civil Procedure, or in the alternative moved for a new trial. Defendants likewise renewed their motion for directed verdict after trial under Rule 50(b). Hearing was had on the motions and briefs in support of and in opposition to the motions were submitted and the motions are now before the court for ruling.

### Plaintiff's Motions

Plaintiff's contentions in support of its motions are twofold. First it says that because of the provision of the policy excluding coverage while the plane was being operated by any person not properly certificated by the required governmental authority for such operation, it was entitled to a directed verdict as a matter of law since the plaintiff contended and the jury found that Jack Elderkin was flying the plane at the time of the crash, and it is undisputed in the evidence that Elderkin was not properly certificated for the flight being carried on. Secondly plaintiff contends it is entitled to either a directed verdict or a new trial because there was no evidence before the jury to support the negative answer which the jury gave to Interrogatory No. 2, and that such answer was against the weight of the credible evidence.

As to plaintiff's first contention, there is no question that, in the absence of Endorsement #2 on the Jack Elderkin policy, the exclusion would apply and there would be no insurance coverage on the fatal flight, because it was stipulated that Elderkin was not properly certificated for that flight. However, Endorsement #2 was attached to the policy and must be considered together with the policy. Section 40–3725, R.C.M.1947, provides:

> "Construction of policies. Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy."

---

1. This policy did not contain an endorsement similar or equivalent to Endorsement #2 on the Jack Elderkin policy.

■ In Terry v. National Farmers Union Life Insurance Company, 138 Mont. 333, 356 P.2d 975, at 978, the Montana Supreme Court said with reference to construing insurance policies:

"We keep in mind that in construing an exclusion policy, in case of uncertainty, every doubt should be resolved in favor of the insured, and the policy should be construed strictly against the insurer company. Montana Auto Finance Corp. v. British etc., Underwriters, 72 Mont. 69, 232 P. 198, 36 A.L.R. 1495. Otherwise stated, a contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. (Citing cases)."

With these principles in mind and turning to the Elderkin policy in this case with Endorsement #2 thereon, it is obvious that there must have been some reason and purpose for the endorsement, or it wouldn't have been added to the policy. It is an endorsement that was specially prepared in typewriting, not a printed form. The endorsement was not requested by Elderkin, but was attached to the policy on the company's initiative for reasons which do not appear. Endorsement #2 reads "In consideration of the premium charged, it is hereby understood and agreed that coverage provided by this policy while the aircraft is in flight shall not apply unless the pilot in command of the aircraft is JACK ELDERKIN or any other pilot who is properly certificated and rated for the flight and the aircraft, and has logged" specified numbers of hours in specified types of aircraft.

The purpose of the endorsement could not have been to exclude coverage unless the plane was being flown by a properly certificated and rated pilot, because that exclusion was provided for in the body of the policy under "Exclusions"

and the endorsement would not have been necessary for that purpose. If the purpose of the endorsement was to require that the pilot in command [2], in addition to being properly certificated and rated, have the numbers of hours specified in Endorsement #2 before the insurance would be effective, it would have been a very simple matter to so provide, without specifically and in capital letters naming Jack Elderkin as pilot in command. In other words, if the purpose of the endorsement was simply to require pilot qualifications over and above certification and rating, the endorsement would have read "that coverage provided by this policy while the aircraft is in flight shall not apply unless the pilot in command is properly certificated and rated for the flight and the aircraft and has logged a minimum of 400 first pilot hours", and so on.

■ The only remaining conclusion as to the purpose of Endorsement #2, and the only logical construction that can be made from the endorsement itself, is that the endorsement was attached to the policy to make the insurance effective when Jack Elderkin was pilot in command, regardless of his certification or rating, but to require that others who might pilot the plane be properly certificated and rated and have the number of hours of flight time specified in the endorsement in order for the insurance to be effective.

This construction of Endorsement #2 is also supported by the manner in which the evidence shows aircraft insurance is issued by the plaintiff company. When a pilot such as Jack Elderkin applies for insurance, he submits with his written application a Pilot History Data sheet which contains information with reference to his flying experience. No doubt, the company's decision as to whether or not it will accept such applicant as an insured is based largely on the Pilot His-

2. The term "pilot in command" apparently means operating the plane for the Federal Aviation Regulations provides that a private or commercial pilot may log as pilot in command only the flight time during which he is the only manipulator of the controls of an aircraft for which he is rated or the flight time during which he is the only occupant of the aircraft. Title 14 CFR, Sec. 61.39(4) (c).

tory Data sheet and the information therein contained. However, the insurance is intended to cover the aircraft when it is piloted by others than the applicant who becomes the named insured, and since the company has no way of obtaining information concerning the pilot qualifications of these others who might fly the plane comparable to the information obtained from the Pilot History Data sheet of the named insured, it protects itself by excluding coverage if the others who fly the plane are not properly certificated and rated.

Plaintiff's second contention in support of its motions is that Jack Elderkin did misrepresent the type of pilot certificate he held on his Pilot History Data sheet, and that there was no evidence from which the jury could find he did not make such misrepresentation, and that such finding by the jury was against the weight of the evidence.

The evidence is that Jack Elderkin was a qualified pilot of single engine land type aircraft as well as a qualified helicopter pilot. However, for some reason not explained by the evidence he was not certified by the Federal Aviation Agency as a pilot of a single engine land aircraft, which was the type plane involved, but he did have an FAA certificate as a commercial pilot with the rating of Rotocraft-Helicopter.

Elderkin applied for the insurance in question to a local agent of the plaintiff company. The written application for insurance and Pilot History Data sheet were filled out in the handwriting of the agent and signed by Elderkin. The agent testified that he obtained the information from Elderkin. There is no evidence that Elderkin was ever directly asked if he possessed a certificate for single engine land type aircraft, nor does the form itself directly ask such question. The form does inquire as to "Airman Certificate No:", and filled in there is Elderkin's Rotocraft-Helicopter Certificate number. Under "Ratings" the form says, "Check those presently held which are still in effect", and then are listed various ratings such as student, private, com-

mercial and so on. Rather than checking the ratings as directed by the form, the agent inserted various numbers which he stated were the hours of each type flying Elderkin claimed to have had. It is apparent that the agent, rather than asking about ratings at that point on the form, inquired as to hours of flying time of the various classes, and then further along in the form where inquiry is made as to hours of flying experience of various kinds the form is left blank.

■ Counsel for plaintiff in his memorandum in effect concedes that the evidence was sufficient for the jury to find that the agent was not sufficiently careful in questioning Elderkin concerning his ratings and pilot qualifications. However, he contends that a direct misrepresentation was made on the form where, in answer to the question "Are you flying subject to limitations or a waiver?" the answer filled in is "no". Counsel contends that Elderkin's Rotocraft-Helicopter Certificate shows on the face of it that his flying was limited to rotocraft and helicopters. The certificate reads in part

"This certifies that Jack Jasper Elderkin * * * has been found to be qualified to be properly qualified to exercise the privileges of COMMERCIAL PILOT No 1545492

Ratings and Limitations

ROTORCRAFT - HELICOPTER. * * * "

It seems to the court quite clear that the words "Rotorcraft-Helicopter" on the certificate are a rating, rather than a limitation as contended by plaintiff.

■■ While all of the evidence is such that the jury might well have come to a different conclusion on the question of misrepresentation than they did, the court finds there was evidence to support their finding and that it was not against the weight of evidence. In this connection, the burden of proving the misrepresentation rested upon the plaintiff and the jury's answer to Interrogatory No. 2 may simply indicate a belief that plain-

tiff failed to carry its burden of proof by a preponderance of the evidence, rather than an express finding that no misrepresentation was made. The evidence would likewise support that result.

Therefore, it is ordered and this does order that the plaintiff's motions for directed verdict and new trial are denied.

### Defendants' Motion

Defendants' motion for directed verdict was based on the contention that there was insufficient evidence to submit to the jury the question of who was flying the airplane at the time of the crash. Most of the evidence on the question of who was flying the plane at the time of the accident was stipulated to in the pretrial order.

Briefly the evidence is that the plane involved was a Mooney Mark Super 21 with a 200 horsepower motor, retractable landing gear and dual controls. It had been purchased new by Jack Elderkin some four or five months before the accident, and he had flown the plane considerably himself. He was the owner of the plane at the time it crashed.

Jack Elderkin was president and general manager of Butte Aero Sales and Service, and Robert Hodge was employed by that organization as an apprentice aircraft mechanic. Hodge held a private pilot's certificate and was an enthusiastic pilot anxious to learn to fly all types of aircraft. He had, so far as is known, never flown the Mooney Mark Super 21 in question.

The day of the accident, March 21, 1964, was a Saturday and Hodge's day off. Why he was at the airport on that day, and subsequently in the plane is not known. At any rate, at approximately 11:30 A.M., the plane, with Elderkin and Hodge aboard, took off from the Butte airport. At the time of the takeoff Elderkin occupied the left hand seat of the plane and Hodge the right. The left hand seat is the seat usually occupied by the one actually flying the plane even in the case of a student learning to fly, although the plane could be flown from either seat. Immediately prior to the takeoff Jack Elderkin radioed the Butte Flight Service Station for permission to take off. At about noon the plane was observed by two men on the ground about one mile northwest of where the wreckage was subsequently found. At that the time the plane was going through various maneuvers and was quite low. The men on the ground did not observe the crash. When the wreckage was found in a field about 10 miles southwest of Butte, the body of Hodge was found still strapped in the right hand seat and the body of Elderkin was found some distance from the fuselage.

Under the circumstances it is impossible for anyone to be absolutely certain as to who was piloting the plane when it crashed, but the court believes there was sufficient evidence for the jury to find that Elderkin was the pilot. The only evidence that Hodge might have been the pilot was that he could fly and liked to do so, and that the plane had dual controls. On the other hand, Elderkin was the owner of the plane and had frequently flown it, whereas Hodge had never flown it. At the time of takeoff Elderkin occupied the seat from which a plane is usually and customarily flown, and after the crash Hodge was still strapped in the opposite seat. Elderkin requested permission to take off.

There is a conflict in the authorities as to whether this evidence is sufficient to go to the jury. See Anno. 36 A.L.R.2d 1290. No Montana cases on the question have been found. However, the Court of Appeals for the Ninth Circuit, in Boise Payette Lumber Co. v. Larsen, 214 F.2d 373, 46 A.L.R.2d 1038, a case arising in Idaho, upheld a jury's finding as to who was flying a plane at the time it crashed on evidence which is fairly similar and not much stronger than the evidence here. Likewise, in automobile cases where the identity of the driver is at issue, many cases hold that the fact of ownership alone is sufficient to raise a presumption that the owner was the driver. See Anno. 32 A.L.R.2d 988. Here there is evidence in addition to the

fact of ownership pointing to Elderkin as the pilot.

Therefore, it is ordered and this does order that the defendants' motion for directed verdict be and the same is hereby denied.