Wanda J. BEQUETTE, Administratrix of the Estate of William T. Fouche, Deceased, et al., Appellants,

v.

NATIONAL INSURANCE UNDERWRITERS, INC., Appellee.

No. 22929.

United States Court of Appeals, Ninth Circuit.

July 21, 1970.

Clayton Parr, Savage, Erwin & Curran, Burr, Boney & Pease, Chancy Croft, Croft & Bailey, Anchorage, Alaska, for appellants.

W. C. Arnold, Anchorage, Alaska, for appellee.

Before BARNES, ELY, and HUFSTEDLER, Circuit Judges.

ELY, Circuit Judge:

This is an appeal from a summary judgment in an action brought by National Insurance Underwriters, Inc., the appellee, for a declaration of its liability under a policy of insurance issued to Captain William T. Fouche and Major Wilder Rice to cover them for certain risks attendant to the operation of their private single engine airplane. The controversy arose after the airplane crashed, killing Captain Fouche, the pilot, and his two passengers, Roger Clark Schuette and Byron B. Powelson. After wrongful death actions against Fouche's estate had been filed in the state court of Alaska by the heirs of Schuette and Powelson and the representatives of their estates, National initiated suit in the District Court against the estates of all three men, alleging that coverage was not provided under the terms of its policy and seeking a declaratory judgment to that effect.

The District Court's conclusion of no coverage was based on an exclusion clause of the policy which provides that liability coverage does not apply:

"While the aircraft is in flight whenever the pilot operating the aircraft is not qualified in accordance with the requirements specified in Item 7."

The relevant requirements, as specified in Item 7, read as follows:

"Item 7. Pilots: This policy applies when the aircraft is in flight, only while being operated by the pilot[s] named or designated in Section 1, while holding a pilot certificate at least equal to the type described in Section 2, *with appropriate ratings required for the flight involved,* having not less than the minimum pilot experience indicated in Section 3, and having received a dual checkout from a qualified pilot previously checked out in the model of aircraft insured."
(Emphasis added.)

The "pilot[s] named or designated in Section 1" are listed as Rice, Fouche and "any pilot employed by a fixed base operator." According to the District Court's findings, the exclusion clause unambiguously means that Fouche was not insured against liability if he did not have the appropriate ratings for the ill-fated flight. Since it was uncontroverted that Fouche, who was carrying passengers when the accident occurred, did not have the ratings required to carry passengers, the District Court held that the policy did not provide coverage for the accident. We affirm.

Appellants contend that the exclusion clause relied on by the District Court is ambiguous and that, when interpreted in the light most favorable to the insured, it does not exclude coverage in this case. They cite Fireman's Fund Insurance Company v. McDaniel, 187 F. Supp. 614 (N.D.Miss.1960), aff'd 289 F.2d 926 (5th Cir. 1961), and Insurance Company of North America v. Butte Aero Sales & Service, 243 F.Supp. 276 (D.Mont.1965), as support for their argument that the limitations in Item 7 should be construed so as to apply only to the class of pilots referred to in Section 1 as "any pilot employed by a fixed base operator."

In *Fireman's Fund* the insurer's claim of non-coverage was based on a policy exclusion providing that the policy did not apply when the aircraft was operated by an insured who was flying in violation of any Civil Aeronautics Administration (C.A.A.) Pilots Certificate. Although the insured pilot in that case admittedly was flying in violation of his C.A.A. certificate at the time of the accident, the

court nevertheless held that there was coverage, finding that another provision of the policy, which was typewritten rather than printed, controlled. That provision recited that the aircraft would be operated only by

> "T. H. McDaniels or any currently certified commercial pilot having a minimum of 500 logged solo flying hours including at least 50 hours as first pilot of multi-engine aircraft."

187 F.Supp. at 616. The typewritten provision had been the subject of special negotiations between the insurer and insured and, according to the court, had resulted in a lowering of the pilot requirements and an increase in premium to account for the increase in risk. The court stated that "[t]he plain meaning of this typewritten language is that McDaniel could pilot the aircraft in flight * * * and the coverage would be in effect, whether he was certificated or rated as a pilot by the Civil Aeronautics Administration * * * or not." 187 F.Supp. at 618.

In *Insurance Company of North America*, the insurer's claim of non-coverage was based on an exclusion clause providing that the policy would not apply while the aircraft was being operated by an individual not properly authorized by the appropriate government agency. The insured pilot was not authorized to make the flight that led to the fatal accident, but the court found the exclusion inapplicable. Again the decision turned on the interpretation of a specially prepared typewritten endorsement which read

> " 'In consideration of the premium charged * * * coverage * * * shall not apply unless the pilot in command of the aircraft is JACK ELDERKIN or any other pilot who is properly certificated and rated for the flight and the aircraft, and has logged' [certain hours in specified aircraft]."

243 F.Supp. at 277. The court concluded that the endorsement "was attached to the policy to make the insurance effective when Jack Elderkin was pilot in command, regardless of his certification or rating * * *." 243 F.Supp. at 279.

Since both of these cases involved specially prepared typewritten endorsements which had been added for the purpose of qualifying printed exclusion clauses, they are clearly distinguishable from the case at hand. Here there was no comparable special endorsement relaxing the standard form printed exclusions which plainly restricted the coverage afforded to the "pilot[s] named or designated in Section 1."

Appellants suggest that since another section of the policy shows that the term "permissive users" can be equated with the phrase "pilot[s] * * * designated in Section 1," Item 7 can be read, with appropriate and indicated substitutions, as follows:

> "The policy applies when the aircraft is in flight, only while being operated by *Rice or Fouche or permissive users,* while holding a pilot certificate at least equal to * * *."

According to appellants, when Item 7 is read in this manner it becomes ambiguous because it is unclear whether the limitations of Item 7 are applicable to Rice, Fouche and the permissive users or only to the permissive users. We do not agree. The placing of the comma is significant. As in the insurance policy, appellants' suggested version separates the phrase containing both the named insureds and the general class of insureds from the phrases listing the limitations on coverage. Since both the named insureds and the general class of insureds are set off *together* from the list of limitations, the limitations are applicable to both groups. Even if Item 7 were ambiguous when read as appellants suggest, the short answer to their argument is that Item 7 is not written as they suggest. When read as written, Item 7 is, on this point, not ambiguous.

■ Appellants' second contention is based on a paragraph of the policy entitled "Financial Responsibility Laws."

The provisions of this paragraph are in standard form and read as follows:

"When * * * this policy is certified as proof of financial responsibility for the future under the provisions of any aircraft financial responsibility law such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

Appellants' reliance upon the quoted language derives from the fact that Fouche and Rice had, through a private agreement between themselves and the United States Air Force, obtained permission to base their plane at an Air Force facility. In order to gain this privilege, the Air Force had required, pursuant to its Regulation 55–20,[1] that Fouche and Rice obtain public liability insurance on the aircraft and submit proof thereof to the Air Force. Accordingly, National's agent had, after the issuance of the policy, furnished a "certificate of insurance" to the responsible au-

thorities of the Elmendorf Air Force Base. Permission to base the aircraft at that field was thereupon granted, and it was at that field that the fatal accident occurred. In the certificate, the agent had certified to the Air Force, in effect, that the policy was in compliance with the financial responsibility requirements of the regulation,[2] and appellants therefore argue that the policy was extended so as to confer the coverage for which they contend. They unsuccessfully raised this same argument below.

The appellants attempt to equate Air Force Regulation 55–20 with state automobile financial responsibility laws under which a vehicle owner is held responsible to certain limits, for the negligent operation of his vehicle on public highways. They cite authorities like, for example, Weeks v. Atlantic National Insurance Co., 370 F.2d 264 (9th Cir. 1966). The standard provision of the policy in question, which we have quoted above, and which relates to "financial responsibility laws," was obviously designed to accommodate to, and harmonize with, those public financial responsibility laws which are generally applicable to all vehicles operated upon the public roadways of a particular state. We cannot equate an Air Force Regulation, applicable to only a comparatively few private aircraft owners who, by reason of private agreement, are able to use an aircraft facility

1. The insurance requirement of the Regulation, which has since been amended, then read as follows:

"12. Required Types and Amounts of Insurance and Policy Provisions
Owners or operators of civil aircraft, * * * must carry minimum amounts of insurance * * *. Policies must be carried with companies acceptable to the air force, and at the expense of the aircraft's owner or operator.
a. *Aircraft Required to have Insurance and Amounts:*

* * * * *

(3) Privately owned non-commercially operated aircraft of less than 12,500 pounds will be insured for:
(a) *Bodily Injury Liability* (Excluding Passengers):

At least $50,000 for each person in any one accident, with at least $200,000 for any one accident.
(b) *Property Damage Liability:*
At least $150,000 for each accident.
(c) *Passenger Liability:*
At least $50,000 for each passenger and, subject to the limit for each passenger, a minimum accident limit determined as follows: Multiply the minimum $50,000 for each passenger times the full number of passenger seats (exclusive of crew seats)."

2. The certificate was completed on Air Force form 203. The form's printed language refers to "AFR 55–20" but also, in a part thereof, specifies "Such insurance *as is afforded by the policy* * * *." (Emphasis added.)

privately operated by the Air Force, with the ordinary, and generally applicable, automobile financial responsibility laws.[3]

The policy issued in this case included "passenger liability" coverage within the meaning of the Regulation. As co-owners of the plane, both Rice and Fouche were insured against liability to passengers which resulted from an accident "arising out of the ownership, maintenance or use of the aircraft" so long as the aircraft was being flown at the time of the accident by a pilot meeting the qualifications required by the policy. The qualification requirement was a requirement imposed not only by the policy but also by Federal Aviation Regulations. It would be unreasonable to hold that the Air Force's Regulation 55–20, or any other of its Regulations, should be interpreted to require that an owner or operator insure his aircraft for flights made in violation of Federal Aviation Regulations. We think Regulation 55–20 was intended to require only that coverage be secured for flights made in accordance with all generally applicable laws and regulations of the United States, and as we have pointed out, the Regulation is only applicable to civil aircraft owners who use Air Force facilities.

■ Finally, the appellants urge that National should be estopped, in the circumstances of this case, to deny that its policy afforded coverage to the estates of the named insureds. We have reviewed all of the affidavits which were presented to the District Court, and those submitted by the appellants do not set forth such sufficient facts within the claimed knowledge of the affiants as genuinely to raise the issue of estoppel. *See* Royal Air Properties, Inc. v. Smith, 333 F.2d 568 (9th Cir. 1964); Atkins, Kroll (Guam), Ltd. v. Cabrera, 295 F.2d 21 (9th Cir. 1961); California State Board of Equalization v. Coast Radio, 228 F.2d 520 (9th Cir. 1955). In the latter case, our court defined the necessary elements of estoppel, writing:

"Four elements are necessary: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

228 F.2d at 525. In this case, the affidavits provide no adequate basis for a determination that Fouche and Rice were in any manner deceived or misled by National or that they were unaware of their contractual agreement that coverage under the policy would not exist whenever their plane was piloted by one unauthorized, because of inadequate rating, to transport passengers in the aircraft.[4]

Affirmed.

---

3. While the District Court, in its approach to the problem, recognized that "plaintiff's agent issued a 'certificate of insurance' which indicated that the policy included passenger liability coverage," it held that the "agent's certification could effect no change in the limitations of the policy." This holding was based on the financial responsibility paragraph providing that "such insurance as is afforded by this policy * * * shall comply with the provisions of such [financial responsibility] law to the extent of the coverage and limits of liability required by such law." The court, in effect, believed that this should be read *"only the insurance* afforded by this policy * * * shall comply with [applicable law]," and held that since the insurance afforded by the policy did not cover Fouche while carrying passengers in the plane, the paragraph did not require that the policy be otherwise interpreted.

4. We note, also, the general rule that "While an insurer may be estopped by its conduct or knowledge, or by statute from insisting on a forfeiture of a policy, under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel." 16A Appleman, Insurance Law § 9090; *see also* Annot., 1 A.L.R.3d 1399.