### NATIONAL INSURANCE UNDERWRITERS, Appellant,

v.

### Norma Jean GLOVER et al., Appellees.

### No. 6470.

Court of Civil Appeals of Texas, El Paso.

Feb. 11, 1976.

Rehearing Denied March 10, 1976.

Little & Little, Jack N. Little, Big Spring, Lord, Bissell & Brook, Terry W. Backus, Hugh C. Griffin, Chicago, Ill., for appellant.

Warren Heagy, Ken Griffin, Odessa, for appellees.

## OPINION

OSBORN, Justice.

This case arises from a declaratory judgment suit brought for the purpose of determining coverage under an aviation policy. The Appellant issued its policy of liability insurance to Bill Rogers Trucking Co., Inc. of Odessa, Texas, effective March 1, 1972. The policy provided coverage to Wm. O. Rogers, President of the Company, while flying a single engine Piper aircraft. At 11:20 A.M. on December 9, 1972, Rogers and his two passengers, Burlon E. Glover and Ray Eugene Rives, were killed when the plane crashed in bad flying weather near Quemado, Texas, while on a flight from Odessa to Eagle Pass. After the survivors of the two deceased passengers sued Mr. Rogers' estate and the Trucking Company for damages arising from the crash, this suit was filed to determine questions of coverage under the policy for this particular flight. Upon an agreed statement of facts, with exhibits, the trial Court concluded that there was coverage for the flight and entered judgment for the survivors of the deceased passengers. We reverse and render.

On December 9, 1972, Rogers planned to take Glover and Rives fishing near Eagle Pass. At 7:55 A.M., Rogers called the Midland, Texas, F.A.A. Flight Service Station for a weather briefing for a flight from Odessa to Eagle Pass, and stated his departure would be in three or four hours. He received the following information:

"At 7:00 a. m. the weather at Midland and Del Rio was indefinite 100 feet obscuration, with visibility of ½ mile and fog. Cotulla was reporting an indefinite ceiling of 100 feet obscuration with ¾ mile visibility and light drizzle and fog. San Angelo's report indicated an indefinite ceiling of "zero" with the sky obscured and fog. The area forecast AIRMET indicated ceilings below 1000 feet with visibility less than two miles. The "Clouds and Weather" section of the area forecast for the period from 7:00 a. m. to 7:00 p. m. was as follows: 'Over Texas, portions except west of Pecos River, generally ceilings of 300 foot to 800 foot overcast with visibility at one to three miles and light drizzle and fog and occasional near "zero" conditions . . .' The Del Rio 091111 terminal forecast indicated ceiling 300 feet obscuration, visibility 2 miles with fog variable to ceiling 100 feet obscuration with ½ mile visibility with fog."

Rogers had a private pilot's license which required that he fly visual flight rules (VFR). He was not permitted to fly instrument flight rules (IFR). The crash occurred at a point that was outside controlled airspace, as defined by F.A.A. Regulations. F.A.A. Regulation 91.105(b)(3) provides that no person may operate an aircraft under visual flight rules (VFR) outside controlled airspace, unless flight visibility is at least one statute mile. F.A.A. Regulation 91.105(a)(5) provides that no person may operate an aircraft under visual flight rules (VFR) outside controlled airspace at an altitude of 1,200 feet or less above the surface, unless the aircraft is clear of clouds.

By mid-morning, the weather had cleared somewhat in the Midland-Odessa area and the aircraft departed from Odessa at 9:20 A.M. under conditions which permitted the flight to commence under visual flight rules. At the time of departure, Del Rio, near the route of flight, had a ceiling of 100 feet with visibility of only ½ mile with fog. According to the accident report prepared by the National Transportation Safety Board, the weather at the time and place of the accident was cloudy with fog and a ceiling of 200 feet with ½ mile visibility. The total distance of the flight was 204 statute miles. As shown by a weather map, which is an exhibit to the agreed statement of facts, approximately the first one-third of the flight was in VFR conditions, approximately the next one-third was in probable IFR conditions and approximately the last one-third was in definite IFR conditions.

The parties have stipulated that Wm. O. Rogers was negligent:

"In operating the airplane under conditions which required an instrument pilot rating;

"In failing to communicate with the various ground communication stations in the Del Rio, Eagle Pass area to ascertain the weather conditions existing in that area;

"In operating the airplane at an altitude which was dangerously low to the surface;

"In failing to return to Odessa or other alternate airports where the VFR weather existed;

"In flying into an area wherein the weather was such that IFR Flight Rules existed with full knowledge of the existing inclement weather conditions."

It was further stipulated that those negligent acts were each a proximate cause of the death of Glover and Rives.

The policy provides in Part I—paragraph I—Coverage A—for bodily injury liability and under that provision, the company agrees:

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of: A—bodily injury, sickness or disease, including mental anguish or death at any time resulting therefrom, sustained by any person including or excluding occupants as specified in the declarations; * * *." (The declarations provide coverage for occupants).

The exclusions applicable to Part I provide:

"This policy does not apply under Part I:

(h) under Coverages A, B and C to any aircraft, while in flight,

(3) whenever the pilot operating the aircraft is not qualified in accordance with the requirements specified in Item 6. 'Pilots' of the declarations."

The above referred to Item 6 "Pilots" on the declarations page provides as follows:

| ITEM 6. PILOTS | PILOTS: This policy applies when the aircraft is in flight: (a) only when being operated by the pilot(s) named or designated below. (Pilots) | (b) while holding an F.A.A. pilot certificate and ratings at least equal to those described below, with a currently effective Medical Certificate, and while properly rated for the flight and the aircraft, (Pilot Certificate & Ratings) | (c) and when having not less than the minimums stated below. PILOT FLYING HOURS | |
|---|---|---|---|---|
| | | | Total | Pilot flying hours same make/model as insured aircraft including dual checkout. |
| | Wm. O. Rogers | Private | 660 | 460 |
| | With respect to the aircraft described in Item 4, above, any person employed by a Fixed Base Operator, but only while operating the aircraft within the scope of such employment. | Commercial or Airline Transport | 1,000 | 2 |

Except that when the aircraft is operated in flight by a pilot named above as holding a "Student" Pilot Certificate, this policy applies only when such pilot is accompanied by, or has received prior flight approval and briefing from, a pilot holding a current and effective F.A.A. Flight Instructor Certificate.

The single issue presented in this appeal is whether Wm. O. Rogers was "properly rated" for the flight on December 9, 1972. If not, then Appellant contends that the exclusion noted above applies and no coverage is afforded as to the accident made the basis of this suit. The trial Court concluded that there was coverage, as a matter of law, but that Court made no findings of fact and recited in the judgment that " * * * none are to be implied in support of this judgment." Such recital seems proper since all facts were stipulated; there was no conflicting evidence and no issue as to the credibility of witnesses or the weight to be given certain testimony.

In *Mang v. Travelers Insurance Company*, 412 S.W.2d 672 (Tex.Civ.App.—San Antonio 1967, writ ref'd), the Court considered a provision in a life insurance policy which excluded from its coverage injuries occurring during flight in an aircraft, except while the insured was a passenger in an aircraft "operated by a duly licensed or certificated pilot." At the time of the accident, the aircraft was operated by a student pilot, who by Federal Aviation Regulations was prohibited from carrying passengers. In affirming a summary judgment for the defendant insurance company, the Court said:

" * * * Contracts of insurance are to be construed as are other contracts, giving consideration to all parts of the instrument. *United American Ins. Co. v.*

*Selby,* 161 Tex. 162, 338 S.W.2d 160, 84 A.L.R.2d 367 (1960).

" * * *

" * * * The only reasonable interpretation of the provision in question is that which gives it the effect of limiting liability to those cases where the air travel of the insured takes place under circumstances which reduce, to a considerable extent, the risks incident to such travel. It would, we think, be unreasonable to hold that the provision here involved, which limits coverage to passengers traveling in an aircraft piloted by a duly licensed or certificated pilot, contemplates anything other than situations where a passenger-carrying aircraft is being operated by a pilot whose training, ability and experience are such as to entrust to his care not only his own safety and that of the aircraft, but the safety of passengers as well."

A policy exclusion very similar to the one now before the Court, and involving the same carrier in this case, was before the Court in *Bequette v. National Insurance Underwriters, Inc.,* 429 F.2d 896 (9th Cir. 1970). That case also involved a coverage question arising out of a plane crash in which the pilot and two passengers were killed. The pilot did not have the ratings required to carry passengers. The policy in that case also had an exclusion if the pilot operating the aircraft was not qualified in accordance with the pilot provisions, which required "appropriate ratings required for the flight involved, * * *." Both the trial and appellate courts held that the exclusion clause was unambiguous and that there was no coverage.

■ In *Woods v. Insurance Company of North America,* 38 Cal.App.3d 144, 113 Cal. Rptr. 82 (Ct.App. 1st Dist., Div. 2, 1974), the Court in discussing an exclusionary clause said:

" * * * 'properly certified and rated' when read with the immediately following phrase 'for the flight and aircraft' can only reasonably be interpreted to refer to the pilot's flight proficiency and skill. In the FAA regulations, the term 'rating' refers specifically to the types of aircraft, or equipment category or a class or a particular skill such as *instrument rating,* multi-engine rating, etc." (Emphasis added).

Thus, if "properly rated" has reference to the pilot's flight proficiency and skill, such as an instrument rating, such a rating is required where one operates "the airplane under conditions which require an instrument pilot rating." And in this case, the parties have stipulated such as the first ground of negligence upon the part of Rogers. Since Rogers and his passengers were killed while flying in IFR weather, and Rogers was not rated for flight during IFR conditions, under the exclusion there was no coverage.

Appellees urge that although IFR weather conditions existed in the Odessa area at the time of the weather briefing, by the time the flight began VFR conditions prevailed at Odessa and thus there was coverage for the flight. Even the Appellees do not suggest that there would have been coverage had the flight commenced at 7:55 A.M. when Rogers received the weather briefing and IFR conditions prevailed at Odessa, although that would be the effect of the rule urged in the dissenting opinion. Instead, Appellees rely upon *National Insurance Underwriters v. King Craft Custom Products, Inc.,* 368 F.Supp. 476 (D.Ala.1973), aff'd 488 F.2d 1393 (5th Cir.1974). The facts in that case are very much like the ones in our case, with one important exception. In the *King Craft* case, the pilot was told that the weather at his destination was suitable for VFR flying. After the flight began, the weather changed to IFR conditions. In our case, the pilot only received one weather briefing which indicated the exact type of weather he was to ultimately encounter, namely IFR conditions, and it was stipulated that Rogers was negligent "in flying into an area wherein the weather was such that IFR flight rules existed with full knowledge of the existing inclement weather conditions."

As noted in the *King Craft* case, there may be reasons for denying application to

the policy exclusion concerning being "properly rated" where the pilot takes off believing he is properly rated at the take-off sight, at the destination sight and all along the route in-between. Those reasons do not exist where the pilot is given a weather briefing which indicates that the conditions at his destination are such that he is not rated to fly into that type of weather and yet, with full knowledge of such inclement weather conditions, he commences the flight and travels approximately one-third of the flight in definite IFR conditions before attempting, as Mr. Rogers did, to turn around and avoid such conditions. Unfortunately, that decision came too late.

The policy defines "in flight" as being from the time the aircraft moves forward in taking off, while in air, and until the aircraft completes its landing. Rogers was thus required to be "properly rated" at all time during the flight, i. e., from the beginning to the end. Clearly, he was "properly rated" when he took off under VFR conditions at Odessa. Just as clearly, he was not "properly rated" when he crashed in IFR conditions near Quemado. In between, his coverage must necessarily be determined by whether at any given time he was flying in VFR conditions for which he was properly rated, or IFR conditions for which he was not properly rated. *Ranger Insurance Company v. Rogers,* 530 S.W.2d 162 (Tex. Civ.App.—Austin 1975, writ pending).

Rogers requested only one weather report, and was advised that at 7:00 A.M. at Del Rio, the nearest reporting station to his destination, the weather was "indefinite 100 feet obscuration, with visibility of ½ mile and fog." The Del Rio forecast was "indicated ceiling 300 feet obscuration, visibility 2 miles with fog variable to ceiling 100 feet obscuration with ½ mile visibility with fog." The forecast proved accurate and the weather at 11:05 A.M. and at 12:00 Noon at Del Rio continued cloudy with fog, with a ceiling of 200 feet and visibility of ½ mile. In this case, the pilot did not encounter unexpected weather, and the weather did not change during the flight. Instead, as stipulated in the record, the pilot knowingly flew into IFR conditions for which he was not rated and about which he had been advised before the flight commenced. Under those circumstances, there was no coverage under his liability policy.

The judgment of the trial Court is reversed and judgment is here rendered for the Appellant.

PRESLAR, Chief Justice (dissenting).

It is a matter of regret that I am driven to disagree with the learned opinion of the majority, but I would affirm the judgment of the trial Court.

I would construe the policy to mean that the exclusion upheld by the majority applies only where there is a violation of the pilot's rating as distinguished from a violation of F.A.A. Flight Regulations. Under the stipulated facts of this case, the pilot was not in violation of his rating.

The cases cited by the majority support the proposition that the exclusion applies where there is a violation of the pilot's rating. In *Mang v. Travelers, supra,* cited by the majority, the exclusion applied because the one operating the aircraft was not licensed to carry passengers; he was in violation of his license or rating in that he was only a student pilot; in *Bequette v. National Insurance Underwriters, Inc.,* cited by the majority, the pilot did not have a commercial license but was carrying passengers for hire. Clearly, he was in violation of his rating, and the Court said: "Since it was uncontroverted that Fouche, who was carrying passengers when the accident occurred, did not have the ratings required to carry passengers, the District Court held that the policy did not provide coverage for the accident. We affirm." In *Woods v. Insurance Company of North America,* from which the majority quotes, the question was whether the pilot was properly certified and rated because his medical certificate had expired prior to the flight. The pilot did have a proper rating and the Court held that not having the medical certificate current did not exclude coverage—that he was a properly certified and rated pilot for the flight. In our case, the pilot was not in

violation of his certificate. Pilot ratings are a very definite thing; they are a governmental license to do certain things and what the holder can and cannot do is well known to those having the ratings. As noted from the cases cited, a student cannot carry passengers; one who does not have a commercial rating cannot carry passengers for hire; and in the case before us, the pilot having the rating of a private pilot is not eligible to make an instrument flight.

My difference with the majority turns on the fact that I do not think he was in violation of his rating. This, because he was not attempting to make an instrument flight. An instrument flight rating is a separate and distinct rating which, among other things, entitles one to fly blindly without being able to see land but to base his course and operation of the aircraft purely from sounds coming to him from radio reception. The pilot is flying blind, depending only one his ears—what he hears from the instruments as to which operation of the controls to make. Rogers, the pilot in this case, was not attempting to do that. He was not attempting to fly instruments. He was flying visual, attempting to see the ground. That, he was qualified and rated to do. When the weather fell below the visual flight regulations of the F.A.A., he was in violation of those regulations but he was not in violation of his rating. His rating did not change each time he passed through a cloud; neither did the coverage under this policy change each time the weather conditions changed from visual flight conditions to IFR flight conditions. I cannot believe that the parties to this contract of insurance intended that the coverage would go on and off each time the weather conditions changed. The construction which the majority gives the policy makes for uncertainty and should be construed against its author.

In arriving at the intent of the parties to the contract, I think the situation is analogous to the rental of an automobile. There, the rental agency asks only if you have a license to operate the automobile and they rely on that license, not on your judgment or skill in the operation of the automobile. Here, the policy relies on the licensing of the pilot; if he is rated to do certain things, then there is coverage while he is doing those things. The licensed automobile driver may be negligent and may violate the traffic laws; likewise, the pilot may violate the F.A.A. Regulations, that is, fly in bad conditions or use bad judgment, and may be negligent, but that does not end the coverage. So it is here; our pilot may have used bad judgment; he may have violated the F.A.A. Flight Regulations in flying in the type of weather that he did, but he did not violate his rating; he did not attempt an instrument flight.

In our construction of this policy, we must bear in mind that the provision under consideration is an exception or exclusion from coverage. The well-settled general rule is that exceptions, limitations and exclusions to insurance agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations upon that coverage in clear and explicit terms. 13 J. Appleman, Ins.L. & P., § 7387, Supp.1970; *Roach v. Churchman,* 431 F.2d 849 (8th Cir. 1970); *Ranger Insurance Company v. Culberson,* 454 F.2d 857 (5th Cir.1971). In our case, if the insurer wished to suspend coverage in the event of any violation of F.A.A. Flight Regulations, then it should have specifically said so in the policy.

I would affirm the judgment of the trial Court.