WEST MEMPHIS FLYING SERVICE, INC., *v.* AMERICAN
AVIATION & GENERAL INSURANCE COMPANY.

4-8782                                                     219 S. W. 2d 215

Opinion delivered April 4, 1949.

McDonald, McDonald & Kuhn, Louis E. Black and
Cecil B. Nance, for appellant.

Buzbee, Harrison & Wright, for appellee.

GRIFFIN SMITH, Chief Justice. A Piper Cub airplane, piloted by Thomas J. Jordan, Jr., crashed and was demolished. It belonged to West Memphis Flying Service and was insured up to $1,750 by American Aviation. When sued the insurer defended on the ground that under Exclusion (d) of the policy there was no coverage while the craft was being operated in violation of the provisions of the Civil Aeronautics Administration, or its successor, "with respect to the pilot." Jordan had a certificate as student pilot, issued by the Administration of Civil Aeronautics, Department of Commerce. Rules prohibit students from piloting an aircraft carrying a passenger. It is stipulated that William A. Goddard, as a passenger, was with Jordan when the crash occurred, and that the plane was being used without the plaintiff's knowledge or consent.

Appellant thinks the trial Court's conclusion that the plane was not insured against loss in the circumstances shown was due to a misconception of the Commerce Department's basic rule-making power, and the law. It was shown that prior to 1940 matters pertinent

to the controversy here were dealt with by Civil Aeronautics Authority. As thus created, the so-called Authority consisted of a five-man board, with an Administrator.

It is contended that the Administrator, alone, was not authorized to issue safety regulations affecting pilots. By Congressional Resolution effective June 30, 1940, name of the five-man Authority was changed to Civil Aeronautics Board. Appellant argues that the Board, formerly known as the Authority, retained power to establish safety standards, and that no such agency as Civil Aeronautics Administration, or Administrator of Civil Aeronautics, is in existence; hence neither could have issued restrictive regulations, as mentioned in the policy, and there was no violation of "provisions of the Civil Aeronautics Administration."

We readily agree with the trial Court. The Federal Government uses "Administrator of Civil Aeronautics," and "Civil Aeronautics Administration" interchangeably. This was testified to by an attorney and aviation expert called by appellant, whose explanation was that rules were made by the Board "and enforced by the Administrator or Administration, whichever you want to call it."

The pilot's license was captioned, "United States of America, Department of Commerce, Civil Aeronautics Administration." It was issued "By direction of the Administrator of Civil Aeronautics." Mr. Maurer, testifying for appellant, said that members of the public generally refer to the Civil Aeronautics Administration "when, practically, they mean the Administrator of Civil Aeronautics." The Government's recent publication, "Organization of Federal Executive Departments" (printed on a sheet 36 by 44 inches) lists—under the Department of Commerce—"Civil Aeronautics Administration, Office of the Administrator." It is dated January 1, 1949. "To accompany Committee Report No. 5."

Our view is that "Administration," as used in the policy, and as the term was treated by the contending parties, meant the Washington agency having control of

aviation, including "Board," "Authority," "Administrator." Congress had lodged with such bureau full power to restrict use of the air in its relation to aviation. The high degree of scientific and practical knowledge required to make flying reasonably safe justifies the enforcement of rigid rules. In the case at bar the insurer and the insured will be conclusively presumed to have been familiar with these rules and their source. Since the terms "Administrator," and "provisions" must have been understood in the same sense by the contracting parties, effect will be given the exclusion clause, affirming the judgment.