431 F.2d 849
 E. Roberta ROACH, Administratrix of the Estate of John Hubert Roach, Deceased, (Plaintiff)-Appellant,
v.
John P. CHURCHMAN, Administrator of the Estate of Merle Ravenstein, (Defendant)-Appellant,
v.
AMERICAN HOME ASSURANCE COMPANY, Appellee.
AMERICAN HOME ASSURANCE COMPANY, a Corporation, Appellee,
v.
E. Roberta ROACH, Administratrix of the Estate of John Hubert Roach, Deceased; The Estate of Merle Ravenstein, Deceased; and John P. Churchman, Administrator of said Estate, Appellants, and Rose Ravenstein.
 No. 19923.
 No. 19924.
 No. 19945.
 No. 19946.
 United States Court of Appeals, Eighth Circuit.
 September 18, 1970.
 
 J. Patrick Green, Omaha, Neb., for appellant, E. Roberta Roach, and others and filed brief; John P. Miller, Omaha, Neb.; David McCann, Council Bluffs, Iowa, Tom H. Davis, Austin, Tex., and John P. Churchman, Council Bluffs, Iowa, were on the brief with Mr. Green.
 William L. Morrow, Austin, Tex., for appellant, E. Roberta Roach; brief was filed by John P. Miller, Omaha, Neb., David McCann, Council Bluffs, Iowa, and Tom H. Davis, Austin, Tex.
 John M. Peters, Council Bluffs, Iowa, for appellee, and filed brief.
 Before MEHAFFY and BRIGHT, Circuit Judges, and HARPER, Chief District Judge.
 BRIGHT, Circuit Judge.
 
 
 1
 Merle Ravenstein, the insured, piloted a single-engine airplane which crashed during the night of August 20-21, 1966, causing his own death and that of his passenger, John H. Roach. Ravenstein's final ill-fated flight commenced at St. Joseph, Missouri, at 11:23 p. m., and ended at approximately 12:15 a. m. when the plane crashed near Glenwood, Iowa, enroute to Omaha, Nebraska. According to the records kept in his pilot log book, Ravenstein had failed to practice night landings and take-offs within ninety days of the fatal flight. Federal Aviation Administration[1] regulations prohibit a pilot from carrying passengers at night without such recent night flying experience. The insurer, American Home Assurance Company, instituted a declaratory judgment action seeking the court's determination of no liability for this accident under an aviation insurance policy which protected Ravenstein against liability claims. The insurer contends that Ravenstein's violation of this night flight regulation relating to aircraft passengers served to negate coverage under exclusions contained in the policy. The trial court, in an unpublished opinion, agreed with the insurer and entered a judgment declaring the policy inapplicable to this accident. The defendants in the declaratory judgment action, John Churchman as administrator of the pilot's estate, and the passenger's widow, E. Roberta Roach, as administratrix, appeal.[2] For reasons stated below, we reverse and hold the pertinent exclusionary clauses inapplicable in this case.
 
 
 2
 The insurance policy in effect at the time of the accident afforded, among other things, protection to the named insured, Merle Ravenstein, and his wife Rose for bodily injury or death claims (including passengers) "caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." It also contained the following exclusions pertinent to this case:
 
 This policy does not apply:
 
 3
 * * * * * *
 
 
 4
 3. while, with the knowledge and consent of an insured —
 
 
 5
 (a) the aircraft is being operated by an approved pilot who commences a flight in violation of the terms and limitations of his Federal Aviation Agency Pilot Certificate or Medical Certificate;
 
 
 6
 (b) the aircraft is being used for any unlawful purpose. * * (Emphasis added.)
 
 
 7
 The insurer, as plaintiff, presented the following few facts to the trial court in support of its complaint. Ravenstein's flight records contain entries showing that he performed "six night touch & go landings 4-15-66." In a separate aircraft log book, Ravenstein, under the same date, entered a notation that "new landing lights worked good." These records disclose no additional night flying from April 15, 1966, to the final entry dated August 11, 1966. Ravenstein's widow testified that her late husband had disliked night flying, had accurately kept flight records and to the best of her knowledge had not participated in flying after dark between April 15, 1966, and the date of the fatal flight, a period spanning 127 days.
 
 
 8
 The specific FAA regulation relied upon by the insurer to deny coverage under the policy exclusion reads:
 
 
 9
 § 61.47 Recent flight experience.
 
 
 10
 * * * * * *
 
 
 11
 (b) Night experience. No person may act as pilot in command of an aircraft carrying passengers during the period beginning 1 hour after sunset and ending 1 hour before sunrise (as published in the American Air Almanac) unless, within the preceding 90 days, he has made at least five takeoffs and five landings to a full stop during that period of the day. This paragraph does not apply to operations requiring an airline transport pilot certificate. 14 C.F.R. § 61.47(b) (1970 edition).
 
 
 12
 The district court specifically found that the pilot violated this regulation. Reasoning that a pilot's certificate logically incorporates all FAA regulations pertaining thereto, the court concluded that Ravenstein had commenced his flight in violation of the "terms and limitations of his * * * Pilot Certificate" and had used the aircraft for an "unlawful purpose" within the language of the policy exclusions.
 
 
 13
 In our view, the trial court gave these questioned exclusionary provisions an overbroad construction contrary to the well-settled general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations upon that coverage in clear and explicit terms. This court follows that rule, Aetna Casualty and Surety Company v. Stover, 327 F.2d 288 (1964); Insurance Company of North America v. General Aviation Supply Co., 283 F.2d 590 (1960); Great American Indem. Co. of New York v. Saltzman, 213 F.2d 743 (1954), as do the courts of Iowa whose law governs this diversity action, General Casualty Company of Wisconsin v. Hines, Iowa, 156 N.W.2d 118, 122 (1968); Wilson v. State Farm Mutual Automobile Insurance Company, 256 Iowa 844, 128 N.W.2d 218, 220 (1964); Mallinger v. State Farm Mutual Automobile Insurance Company, 253 Iowa 222, 111 N.W.2d 647 (1961); Olson v. Southern Surety Co., 201 Iowa 1334, 208 N.W. 213, 215-216 (1926). See generally, 13 J. Appleman, Insurance Law and Practice § 7387 (Supp.1970).
 
 
 14
 We here face the question of whether the exclusionary clauses, reasonably construed, incorporate the specific terms of FAA Regulation § 61.47(b). The parties concede that Ravenstein possessed a current private pilot's license entitling him to fly a single-engine land airplane. Neither party introduced the pilot's certificate itself into evidence, but other data made part of the record indicate that Ravenstein possessed a current certificate on the date of the accident. The ordinary reading of the policy phrase "terms and limitations of his Federal Aviation Pilot Certificate or Medical Certificate" reasonably infers the existence of limitations upon either certificate. Indeed, the governing statute expressly provides for limitations.[3]
 
 
 15
 Consideration of the medical certificate limitations aside, the FAA regulations permit the Federal Aviation Administration to issue student, private and commercial pilot certificates plus those for airline transport pilots, special purpose pilots and flight instructors. 14 C.F.R. § 61.3. A private pilot's certificate must bear a category rating as airplane, rotor-craft, glider, or lighter-than-air and a class rating as single-engine land, multi-engine land, single-engine sea, or multi-engine sea. 14 C.F.R. § 61.15. A special section, 14 C.F.R. § 61.16, entitled General limitations, states that no person may act as pilot in command of a small aircraft carrying another person or operating for compensation or hire unless he holds a category and class rating for that aircraft.
 
 
 16
 Under the statutes and regulations, Ravenstein possessed a certificate entitling him to fly the aircraft which crashed. Regulation § 61.47 does not bar a pilot without recent night flight experience from flying an airplane, but simply prohibits his carrying a passenger on a night flight. We construe this regulation as enunciating an operating safety rule, but not rising to the level of a "term, condition or limitation" upon his FAA pilot certificate as used in 49 U.S.C. § 1422 or correspondingly in the policy exclusion.
 
 
 17
 The introductory material of Part 61 of the FAA regulations entitled "Certification: Pilots and Flight Instructors" differentiates between regulations enunciating limitations upon the pilot's certificate and those specifying details concerning flights. It reads:
 
 
 18
 § 61.1 Applicability.
 
 
 19
 This part prescribes the requirements for issuing the following certificates and ratings, the conditions under which those certificates or ratings are necessary, and the general operating rules for the holders of those certificates and ratings [.]
 
 
 20
 Though Ravenstein should not have been carrying a passenger at the time of the accident, his violation of the regulation does not come within the ambit of exclusion 3(a) of his aviation policy. While the pilot's act of carrying a passenger at night in apparent contravention of § 61.47 may have been negligent or even intentional, it did not violate any express term of his pilot's certificate. If the insurer desired to exclude this particular risk, it should have defined more explicitly the risks for which it declined coverage.[4]
 
 
 21
 For example, in Globe Indemnity Company v. Hansen, 231 F.2d 895 (8th Cir. 1956), the policy excluded coverage for "violation of any governmental regulation * * * applying to aerobatics. * * *"; in Bruce v. Lumbermens Mutual Casualty Company, 222 F.2d 642 (4th Cir. 1955), the insurer specifically excluded liability with respect to bodily injury sustained by any passenger "caused by the operation of the aircraft * * * during flight * * * between sunset and sunrise unless all night flying requirements of the Civil Aeronautics Authority are complied with * *"; and in National Insurance Underwriters v. Matthews, 243 Ark. 26, 418 S.W.2d 391 (1967), the aircraft insurer specifically excluded coverage for damage to the aircraft "unless the pilot possesses a valid Instrument rating and is proceeding in accordance with Instrument Flight Rules."
 
 
 22
 In the absence of more explicit language, we perceive no basis for broadly construing the phrase "violation of the terms and limitations of his Federal Aviation Agency Pilot Certificate" to encompass every violation of every FAA regulation.
 
 
 23
 Turning next to a consideration of the "unlawful purpose" exclusion, we note that the appellee and the trial court read these words as being synonymous with "unlawful conduct". The district court arrived at its interpretation by reference to 49 U.S.C. § 1430, which declares that
 
 
 24
 (a) It shall be unlawful —
 
 
 25
 * * * * * *
 
 
 26
 (2) For any person to serve in any capacity as an airman in connection with any civil aircraft, aircraft engine, propeller or appliance used or intended for use, in air commerce without an airman certificate authorizing him to serve in such capacity, or in violation of any term, condition, or limitation thereof, or in violation of any order, rule, or regulation issued under this subchapter [.]
 
 
 27
 Applying this analysis, the insuring agreements become illusory in effect since few accidents occur without the aircraft's owner or pilot violating one or more of the very detailed regulations promulgated by the Federal Aviation Administration. In Thompson v. Ezzell, 61 Wash.2d 685, 379 P.2d 983 (1963), the insurer denied liability under an aviation policy which excluded coverage for any flight made in violation of Civil Aeronautics Administration regulations[5] pertaining to the airplane's airworthiness certificate. The Washington State Supreme Court rejected the insurer's contention that overloading the plane in violation of CAA regulations activated the exclusionary clause, stating:
 
 
 28
 The C.A.A. regulations are so comprehensive that it may be virtually impossible to have a crash without a violation of at least one of those regulations. * * * Thus, we find that the most reasonable interpretation of exclusionary Clause 1-A is that it only relates to those C.A.A. regulations pertaining to the certificate itself and not to all of the C.A.A. regulations in general. 379 P.2d at 988-989.
 
 
 29
 Adoption of the insurer's contention that the "unlawful purpose" exclusion incorporates every violation of an FAA regulation would lead to an absurdity. Violation of certain technical FAA regulations concerning a flight would be totally unrelated to the resulting damages. Yet, under the insurer's theory, it would not be liable. Moreover, the insurer could avoid coverage for all damages to person or property stemming from ordinary negligence, since careless flying constitutes flight in violation of FAA regulations.[6] So read, the insurance policy affords no real coverage for liability claims. We, therefore, decline to give this policy such a reading.
 
 
 30
 It is apparent that if the insured is to receive a modicum of coverage under an aviation insurance policy, an exclusion suspending coverage for an "unlawful purpose" must be read literally and restrictively. The word "purpose" suggests "an object to be attained: an end or aim to be kept in view in any plan * * * or operation." WEBSTER'S INT'L DICTIONARY p. 1847 (3d ed. 1966). The record here gives no indication as to the purpose of the insured's flight. The only evidence produced by the insurer merely disclosed that the aircraft crashed while enroute from St. Joseph, Missouri, to Omaha, Nebraska. Absent other evidence concerning the object of this trip, we are unable to find it was undertaken for an unlawful purpose.
 
 
 31
 In Hall's Aero Spraying, Inc. v. Underwriters at Lloyd's London, 274 F.2d 527 (5th Cir. 1960), an aircraft owner, while carrying on crop dusting operations, violated state regulations requiring permits and licenses for the flight. The Fifth Circuit determined that such violations did not make the flight one for an unlawful purpose within a similar aircraft aviation policy exclusion which suspended liability coverage when the aircraft was used "for any unlawful purpose." The court denied the application of the exclusion saying:
 
 
 32
 There was no purpose to do an unlawful act. The purpose was to spray by aircraft; a purpose recognized as lawful, even though regulated, by the Texas Legislature. 274 F.2d at 532.
 
 
 33
 We agree with this analysis. Its application here forces a conclusion that the sole fact that Ravenstein was carrying a passenger in violation of an FAA regulation does not, by itself, mean that he flew for an unlawful purpose.
 
 
 34
 We have examined the cases dealing with aviation policies cited by the appellant and we find them unpersuasive. For the most part, only their result, not their rationale, lends support to an affirmance. For example, in Underwriters at Lloyd's of London v. Cordova Airlines, Inc., 283 F.2d 659 (9th Cir. 1960), the policy contained an exclusion avoiding coverage for loss arising from "* * * any flying in which a waiver issued by the Civil Aeronautics Authority is required. * * *" In construing this clause, the court declared that the obtaining of a waiver, when required by CAA regulations, was a condition precedent to policy coverage. The court found that the insured had failed to secure a CAA waiver, clearly required for his cargo of dynamite, and, thus, coverage was suspended.
 
 
 35
 Similarly, in Globe Indemnity, supra, 231 F.2d 895, the aviation policy excluded coverage for violation of any governmental regulation applying to aerobatics, flying below minimum safe altitudes or intentionally performing aerobatics at less than 1,000 feet above the terrain. The court specifically found that the pilot had violated state law relating to aerobatic flying, noting that the pilot's activity fell "clearly within the express exclusions of the policy." 231 F.2d at 905.
 
 
 36
 Appellant cites McCann v. Iowa Mut. Liability Ins. Co. of Cedar Rapids, 231 Iowa 509, 1 N.W.2d 682 (1942), as a case closely in point, although it concerns a motor vehicle liability policy. The policy excluded liability coverage for the vehicle while operated "by any person in violation of any state * * * law as to age applicable to such person. * * *" Iowa law limited the driving of fifteen-year-olds to trips to and from school. The insured's son, age fifteen, while driving the automobile on a joy ride, caused injuries to a third person. The Iowa Supreme Court held the exclusion applicable, noting that the minor's license was invalid at the time of the accident. The explicitness of the exclusion in that case, again far different from that here, justified the result.
 
 
 37
 Appellee seeks affirmance upon the additional theory of default by defendants Rose Ravenstein and administrator Churchman, who both failed to file formal answers to the complaint. This claim has no substance. Roach's estate made no claim against the insured Rose Ravenstein in the pending collateral action. Appellant Churchman appeared at the trial and joined with Roach's counsel in moving to dismiss the insurer's complaint. The trial court gave no favorable consideration to the insurer's request for default judgment. Fed.R.Civ.P. 55 permits a trial court to consider the merits of the action despite the fact that some defendants may fail to answer.
 
 
 38
 Finally, in view of our reversal of the declaratory judgment action, we find it unnecessary to consider Ravenstein's and Churchman's appeals in No. 19923 and No. 19945, in which they object to an interlocutory order of the district court entered in the wrongful death action. That order permitted the insurer to defend the damage action while reserving its rights to decline coverage pending final adjudication on appeal of the declaratory judgment action.
 
 
 39
 Our reversal on the appeals in the declaratory judgment action (No. 19924 and No. 19946) determines that the insurer incurred an initial obligation to defend the damage action and that it must provide a continuing defense to Mrs. Roach's suit. Any decision on appeal from the interlocutory order authorizing the insurer to defend will not change this result nor the legal obligations sustained by the insurer. We dismiss, without costs to any party in No. 19923 and No. 19945, for mootness since any decision we might make thereon cannot have any practical legal affect on the remaining controversy relating to the parties. See Flight Engineers' International Association, AFL-CIO, TWA Chapter v. Trans World Airlines, Inc., 305 F.2d 675, 680 (8th Cir. 1962).
 
 
 40
 The cause is reversed and remanded for entry of judgment in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 With the creation of the Department of Transportation in 1967, the Federal Aviation Administration was established. 49 U.S.C.A. § 1652(e) (Supp.1970). The Federal Aviation Administration then assumed all functions, powers and duties formerly carried out by the Federal Aviation Agency. 49 U.S.C.A. § 1655(c) (Supp.1970)
 
 
 [2]
 Preceding the instant declaratory judgment action, Mrs. Roach, in her capacity as administratrix, brought an action against John Churchman, as administrator of the Merle Ravenstein Estate, seeking damages for her husband's wrongful death
 
 
 [3]
 49 U.S.C. § 1422 (1963) provides, in part:
 "(a) The Administrator is empowered to issue airman certificates specifying the capacity in which the holders thereof are authorized to serve as airmen in connection with aircraft.
 * * * * *
 (b) Any person may file with the Administrator an application for an airman certificate. If the Administrator finds, after investigation, that such person possesses proper qualifications for, and is physically able to perform the duties pertaining to the position for which the airman certificate is sought, he shall issue such certificate, containing such terms, conditions, and limitations as to duration thereof, periodic or special examinations, tests of physical fitness, and other matters as the Administrator may determine to be necessary to assure safety in air commerce.
 * * * * *
 (c) Each certificate shall be numbered and recorded by the Administrator; shall state the name and address of, and contain a description of, the person to whom the certificate is issued; and shall be entitled with the designation of the class covered thereby. * * *" (Emphasis added.)
 
 
 [4]
 For a general discussion of risks covered or excluded under aviation liability policies, see Annot. 48 A.L.R.2d 704 (1956)
 
 
 [5]
 Now superseded by FAA regulations
 
 
 [6]
 For example, 14 C.F.R. § 91.9 states that "No person may operate an aircraft in a careless * * * manner so as to endanger the life or property or [sic] another." Under the insurer's proposed policy interpretation, such negligence would fall within the "unlawful purpose" exclusion.