544 P.2d 250

**RANGER INSURANCE COMPANY, a New York Corporation, Appellant,**

v.

**Robert W. PHILLIPS et al., Appellees.**

**No. 1 CA–CIV 2707.**

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 8, 1976.

As Amended on Denial of Rehearing
Feb. 24, 1976.

Review Denied March 16, 1976.

Lewis & Roca by John P. Frank, D. W. Grainger, Phoenix, for appellant.

Skousen, McLaws & Skousen, P. C., Mesa, for appellees Phillips.

Charles M. Brewer, Ltd., and Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellee Boyle.

## OPINION

FROEB, Judge.

This suit was filed by appellant Ranger Insurance Company (Ranger) to obtain a judicial declaration of the extent of its duties and obligations under a contract of aircraft insurance. After a non-jury trial, the trial court found the company had a duty to defend appellees Robert W. Phillips (Phillips) and Ivadelle Bruner, administratrix of the estate of Marvin L. Bruner, deceased, against a claim asserted by Inez Boyle, individually and as executrix of the estate of Gayle Boyle, deceased, and to indemnify them against any judgment not exceeding $100,000.

Gayle Boyle was a passenger in a small two-seat aircraft (known as a Lark 95) when he died in a crash near Willcox, Arizona, on April 20, 1967. The plane was piloted by Marvin L. Bruner (Bruner), student pilot, whose total experience and flight time consisted of approximately 70 hours. Phillips, the owner of the plane, conducted a flight service business at Falcon Field in Mesa, Arizona, from which the fatal flight originated. As this case involves only the question of insurance coverage, we are not here concerned with the cause of the crash.

Ranger issued a liability policy covering the aircraft (referred to as Lark 9502) in which the two men were killed. Both Phillips and Ivadelle Bruner claim liability coverage for the wrongful death claim aris-

ing out of the crash. Neither Phillips nor Ivadelle Bruner draw any distinction between each other concerning coverage, and they therefore stand or fall together.

The basic questions are (1) whether the insurance contract covered a "student pilot" and, if so, (2) whether certain violations of the Federal Air Regulations by Bruner excluded coverage.

## STUDENT PILOT COVERAGE

■ There was considerable dispute in the trial court whether the contract of insurance between Phillips and Ranger included liability coverage for flight by a student pilot. The formal written contract as finally issued by Ranger did not include it. However, Phillips contended that he requested the coverage when he ordered the policy and was told it had been provided. He never saw the written policy until after the accident. The trial court found that the contract of insurance was intended to provide student coverage and held that Bruner and Phillips were covered. We hold there is sufficient evidence to support the finding.

Some background may be helpful as to the nature of coverage in aviation liability insurance before reviewing the evidence. In all such policies there is what is known as the "pilot clause" containing limitations as to who is qualified to fly the insured aircraft. Typically the policy provides that only certain pilots, either expressly named or described generally as persons possessing certain aeronautical ratings and experience, will operate the aircraft. In conjunction with this, the policy provides that loss caused while the aircraft is operated by someone other than a pilot listed in the pilot clause is excluded from coverage. Under these circumstances, there is no coverage. *Pacific Indemnity Co. v. Kohlhase,* 9 Ariz.App. 595, 455 P.2d 277 (1969). See also, *Chapman v. Ranger Ins. Co.,* 15 Ariz. App. 51, 485 P.2d 1168 (1971).

The written policy issued by Ranger in this case used the following language:

This policy does not apply:

&ast; &ast; &ast; &ast; &ast; &ast;

2. to any occurrence or to any loss or damage occurring while the aircraft is operated in flight by other than the pilot or pilots set forth under Item 7 of the Declarations;

The applicable portion of Item 7 provides:

7. PILOT CLAUSE: Only the following pilot(s) will pilot the aircraft while "in flight" and while holding proper pilot certificate(s) with appropriate ratings as required by the Federal Aviation Agency: See Endorsement No. 1.

Endorsement No. 1 reads:

This Policy applies when the aircraft is in flight only while being operated by the pilot(s) named or by a pilot, solo or as pilot in command, who has a valid and effective pilot certificate, with appropriate ratings, of not less than indicated in the following schedule:

1. Private or commercial pilots having a minimum of 200 total logged hours.

2. Private or commercial pilots having a minimum of 200 total logged hours, including at least 25 in retractable gear aircraft.

3. Private or commercial pilots having a minimum of 5,000 total logged hours, including at least 500 in multi-engine aircraft and a valid multi-engine rating.

As written, the policy does not cover a student pilot. "Student pilot" is a separate category of pilot under Federal Air Regulations, and flight conducted by a "student pilot" is authorized only after the issuance of a student pilot "certificate." See 14 Code of Federal Regulations (C.F.R.) § 61.5. Thus, a "student pilot" is neither a "private pilot" nor a "commercial pilot" under the regulations. A "student pilot," unlike a private or commercial pilot, is not authorized to obtain any of the various "ratings" available to pilots, such as aircraft class and category, or instrument rat-

ings. See 14 C.F.R. § 61.5. Flight operations conducted by student pilots are limited by reason of a separate subpart of the Federal Air Regulations beginning at 14 C.F.R. § 61.81.

The trial court could reasonably have found that there was an oral contract between Phillips and Ranger (through its agents) by which a student pilot was insured. The general rule is that a parol contract of insurance is valid and enforceable. 12 Appleman, *Insurance Law and Practice*, § 7191 at 254. This is true where there is a showing that the parties have agreed on all the essential terms of the contract, including the subject matter, the risk insured against, the time of commencement and duration of the risk, the amount of insurance and the amount of the premium. See 43 Am.Jr.2d, *Insurance*, § 202 at 258. As a corollary to this rule, it was been held that where a written policy has not been issued and the standard provisions of a policy have not been expressly agreed upon, it will be presumed that the parties contemplated such terms, conditions and limitations as are usual in policies normally issued to cover like risks. *Alabama Farm Bureau Mutual Casualty Ins. Co. v. Adams*, 289 Ala. 304, 267 So.2d 151 (1972); *Fisher v. Underwriters at Lloyd's London*, 115 F.2d 641 (7th Cir. 1940); 12 Appleman, *Insurance Law and Practice*, § 7196 at 277; Couch on Insurance, 2d Ed., § 14:16.

Turning now to the evidence in the case, Phillips testified that student instruction was one of the services he provided and that he would not have considered insurance without such coverage. Initially he contacted his own insurance agent, Sabatelli Insurance Agency. Not being familiar with aircraft insurance, Sabatelli contacted John "Sandy" Sanderson who was employed by American Underwriters Agencies, Inc. (American). American had in effect at the time an agency agreement with Aviation Office of America (Aviation), which in turn was an authorized agent of Ranger. The agency agreement authorized the issuance of policies such as the one at issue here. Testimony at the trial revealed that Phillips spoke directly with Sanderson and told him the coverage he wanted, which included student pilots. Accordingly, Sanderson assured him he was covered by Ranger. Sanderson then communicated with William Alderman, an employee of Aviation, both in writing and by telephone, to follow through with the policy. The product of these communications was a written "set-up" sheet in Alderman's handwriting, whereby coverage was arranged for "student, private or commercial pilots" on five aircraft, including Lark 9502, the one which crashed. The words "student, private or commercial pilots" were thereafter crossed out on the "set-up" sheet by Alderman without Phillips' knowledge or consent. The written policy, absent an endorsement for student pilot coverage, was thereafter issued on February 27, 1967, but, as has been pointed out, the policy was not delivered to Phillips until after April 20, 1967, the date of the accident, nor was Phillips informed that the written policy did not provide student pilot coverage. We find that this evidence was sufficient for the trial court to find that student pilot coverage had been sought by Phillips and contracted for by Ranger through its agents.

■ Appellant argues that Phillips was neither charged nor did he pay a premium for student pilot coverage. This is not, however, controlling as to the issue of whether coverage was provided by Ranger. If by not charging the higher premium Ranger intended not to cover student pilots, contrary to the mutual understanding of the parties, that fact was never communicated to Phillips. No policy had ever been delivered which would have indicated to Phillips the extent of coverage provided and a breakdown of premiums charged. The fact that Ranger did not charge a premium for student coverage is thus not evidence of assent by Phillips to the lesser coverage. The trial court dealt with this issue by finding that Phillips "paid the necessary

premiums." Although Ranger is correct that there is no evidence to support a specific premium for student coverage, the finding can be interpreted to mean Phillips paid the premium which was, in fact, charged. In any event, it is immaterial whether the court's finding on this point is factually correct, since it is not determinative of the outcome.

■ In conclusion, the true contract of insurance in this case was found by the trial court to be that which arose out of the oral agreement between the parties and not that as evidenced by the written policy. We find there was sufficient evidence to support the oral contract, and therefore affirm the findings and conclusions of the trial court on this point.[1]

## PASSENGER COVERAGE

A second argument raised by Ranger is that the insurance contract did not provide coverage against liability for death or injury to a passenger carried on a student flight. The argument is based on the standard provisions which exclude coverage for operation of the aircraft by pilots other than those "set forth under Item 7 of the Declarations." As stated previously, Item 7 limited coverage to pilots "holding proper pilot certificate(s) with appropriate ratings as required by the Federal Aviation Agency" or to a pilot "who has a valid and effective pilot certificate." As a student pilot, Bruner was prohibited from carrying passengers. 14 C.F.R. § 61.89. In addition, the words "Passenger Carrying Prohibited" were stamped in bold print on Bruner's student pilot license. Ranger argues that since Bruner was not holding

the proper pilot certificate for carrying passengers, passenger liability coverage is excluded under the policy.

■ In construing insurance policy provisions, any ambiguity is to be construed against the insurer. *Paulin v. Fireman's Fund Ins. Co.,* 1 Ariz.App. 408, 403 P.2d 555 (1965). This rule is particularly applicable where a policy exclusion is concerned. *Potts v. Continental Casualty Co.,* 453 F.2d 276 (9th Cir. 1971). Turning to the language of the contract, we find that the pilot clause provisions are ambiguous as to the issue of passenger coverage. Bruner had a valid student license at the time of the accident. Although Federal Air Regulations impose a restriction against a student pilot carrying passengers (14 C.F.R. § 61.89(a)(1)), a violation of this regulation does not mean that Bruner's license was not "proper" or that it was thereby invalidated.

In *Ranger Ins. Co. v. Culberson,* 454 F. 2d 857 (5th Cir. 1971), the court considered the identical pilot clause found in the policy in this case and applied it to almost identical facts. In holding that the clause did not exclude coverage, the court said:

We do not read the word "proper" as requiring exact compliance with the face of the certificate. It is quite proper for an insurance company to insure a pilot for any permutation of circumstances, whether or not that permutation involves conduct that violates the certificate or the FAA regulations. *Fireman's Fund Ins. Co. v. McDaniel,* N.D.Miss.1960, 187 F.Supp. 614, aff'd, 5th Cir. 1961, 289 F. 2d 926. It is the policy, not the pilot's certificate nor the FAA regulations, that

1. Apparently the trial court agreed with appellees that student coverage arose by reason of the oral contract of the parties, not by reason of reformation of the written policy prepared by the company. On appeal, Ranger argues that a theory of reformation is the only basis for recovery, and since it was neither pled nor proven, the judgment should be reversed for this reason. We disagree. Under the facts of the case, the written policy of insurance was not delivered to Phillips until

after the accident. The essential provisions which make up the insurance coverage are therefor those which were agreed upon orally. Had Phillips received the written policy from Ranger and either expressly or impliedly acknowledged it as the contract of insurance, any oral agreements would have been deemed to have merged into the written policy and reformation of its terms would have been the appropriate remedy.

sets the perimeters of insurance coverage. [454 F.2d at 861.]

\*    \*    \*    \*    \*    \*

.  .  .  with respect to the Pilot Clause, Ranger insists that Culberson's admitted violation of the Federal Aviation Regulations in carrying a passenger operated to make his certificate "improper." 14 C.F.R. § 61.3(a). Again, we cannot agree. We would assume that an "effective" certificate is a "proper" one, however one. might wish to muddle those words about. The FAA regulations provide specifically that any pilot certificate (including a student certificate) [ceases] to be "effective" only if it is "surrendered, suspended, or revoked." 14 C.F.R. § 61.9. [454 F.2d at 864]

As Bruner's student pilot certificate was not "surrendered, suspended, or revoked" prior to the fatal crash, it remained a "proper" and "effective" certificate, notwithstanding the fact that Bruner may have conducted the flight in violation of Federal Air Regulations.

Ranger relies upon *Chapman, supra,* to support its position. In that case, coverage was excluded under the policy,

.  .  .  unless such Student Pilot is under the direction of a qualified FAA Certified Flight Instructor *who shall specifically have approved each flight undertaken by the student prior to take-off.* [15 Ariz.App. at 52, 485 P.2d at 1169. Emphasis added.]

The court denied coverage in *Chapman* because the student pilot had taken the flight without the prior approval of the flight instructor.

Ranger also relies on *Grigsby v. Houston Fire & Casualty Ins. Co.,* 113 Ga.App. 572, 148 S.E.2d 925 (1966); *West Memphis Flying Service, Inc. v. American Aviation & Gen. Ins. Co.,* 215 Ark. 6, 219 S.W.2d 215 (1949); and *Kilburn v. Union Marine & Gen. Ins. Co.,* 326 Mich. 115, 40 N.W.2d 90 (1949). In each of these cases passenger coverage on student flights was denied. We find these cases are distin-

guishable, however, since, in each, coverage was specifically excluded for a *violation* of Federal Air Regulations pertaining to pilot certificates. The policy in this case contained no such "violation" clause.

The most persuasive authority supporting Ranger's position is *Bequette v. National Ins. Underwriters, Inc.,* 429 F.2d 896 (9th Cir. 1970), in which the court denied coverage because the student pilot was flying passengers in violation of a policy provision which stated that the policy applied only when the aircraft was operated by a pilot ".  .  .  with appropriate ratings required for the flight involved." Despite the fact that the policy in the present case contains an "appropriate ratings" clause almost identical to that in the *Bequette* case, we elect not to follow the holding in *Bequette* because we interpret this clause as inapplicable to student pilots. The Federal Air Regulations do not refer to the prohibition against carrying passengers by a student in terms of a "rating." See 14 C.F.R. § 61.89. Moreover, the privilege of carrying passengers is not found in the list of "ratings" available for certified pilots. See 14 C.F.R. § 61.5. This is the conclusion reached by the court in *Culberson,* supra:

.  .  .  "Ratings" of any sort are not given to student pilots, according to the regulations that we are asked to apply. 14 C.F.R. § 61.16(d)(1) and § 61.16(b). It was therefore quite impossible for Culberson, at any time, to receive an "instrument flight rating" or any other rating.  .  .  .  If the absence of flight ratings is an "inappropriate" rating within the ambit of the pilot clause, then, with no possibility of flight ratings of any sort, Culberson would be flying in constant violation of his policy; whatever he did would have an "inappropriate" rating. We refuse to hold that Culberson contracted to pay a premium of $553 per year for a policy that was "suspended" *ab initio.* When Ranger agreed to insure a student pilot, it was charged with the knowledge that he could not

obtain any flight ratings whatsoever while he held that type license. Ranger is estopped from trying to raise "appropriate ratings" from the dead at this point. [454 F.2d at 865]

Consequently, we reject the reasoning of the court in *Bequette* and hold that the policy in this case does not exclude liability coverage for Brunner despite the fact that Bruner was not authorized to carry passengers under his student certificate. In so ruling, we decline to follow *Farmers & Mer. Bank of Manchester v. Ranger Ins. Co.*, 125 Ga.App. 166, 186 S.E.2d 579 (1971) upon which Ranger also relies in support of its argument.

## AIRWORTHINESS CERTIFICATE

For its third argument, Ranger contends that the flight was in contravention of the airworthiness certificate issued for the aircraft involved and that the contract excluded coverage for such flights.

■■■ Exclusion No. 3 provides that the contract would not apply to the aircraft "while in flight, unless its airworthiness certificate is in full force and effect." Ranger argues that since the airworthiness certificate issued by the FAA restricted the use of Lark 9502 to only one person, the carrying of a passenger on the fatal flight violated the terms of the airworthiness certificate. Ranger contends that being thus violated, the airworthiness certificate was not in full force and effect and the exclusion would therefore apply. We do not agree for the reason that the airworthiness certificate remained in full force and effect notwithstanding the violation involved. For a policy exclusion to be effective, it is necessary that it spell out with precision the conditions which will make it operative. In referring only to the "effectiveness" of the airworthiness certificate, the policy fails to do so in this instance.

In *United States v. Eagle Star Ins. Co.*, 196 F.2d 317 (9th Cir. 1952) rev'd on other grounds, 201 F.2d 764 (1953), the court considered a declaration in a policy almost identical to the airworthiness certificate exclusion in the Ranger policy. The court said:

. . . The first condition requires that at the commencement of each flight the plane "shall have a valid and current airworthiness certificate issued by the Civil Aeronautics Authority." Although it is not questioned that a certificate of the kind mentioned had been issued for this plane, yet appellees' position appears to be that the overloading operated to invalidate the certificate of airworthiness.

We cannot come to any such conclusion without rewriting the policy. Had it been intended to make this first condition one which prohibited overloading or other violations of applicable regulations, it would have been a simple matter to find appropriate words to say so. Appellees cite no authority for the construction which it attempts to place upon the phraseology used in stating the first condition, and we do not think their position in that respect is warranted. [196 F.2d at 321]

In *Culberson, supra,* the court dealt similarly with a provision of the policy purporting to exclude coverage unless the pilot had a "proper" pilot certificate:

. . . Words of exclusion in insurance policies should be given small tolerance when insurance companies choose to use words of imprecision. Indeed, the logic of Ranger's argument for exclusion would be to engraft as exceptions to coverage the violation of every proscribed peccadillo of FAA regulations. The cases cited by Ranger in its support go to the heart of coverage, and it cannot be that every impaired capillary blocks coverage. Almost all airplane accidents involve some violation of the Federal Aviation Regulations. Even "careless flying," or simply negligence, is a violation. *See* 14 C.F.R. § 91.9. The *Roach* case [*Roach v. Churchman*, 8 Cir., 431 F.2d 849] construed a similar argument:

"Applying this analysis, the insuring agreements become illusory in effect

since few accidents occur without the aircraft's owner or pilot violating one or more of the very detailed regulations promulgated by the Federal Aviation Administration." 431 F.2d at 853.

To read into the general word "proper" all violations of the regulations would be to hoodwink most insurance purchasers, for it would make a nullity of most coverage. Purchasers believe, and with good reason, that they have bought insurance to protect themselves from precisely those degrees of negligence or outright carelessness that FAA regulations might condemn. Insurance is procured to protect the violator, and every violation cannot nullify coverage. Any intent to use general words as a blunderbuss and every single regulation as birdshot cannot be reasonably upheld. If an insurance company has an intent to deny coverage in a specific set of circumstances, then it should so delineate. *See Moulor v. American Life Ins. Co.,* 1884, 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447. [454 F.2d at 864–865.]

See also: *Roach v. Churchman,* 431 F.2d 849 (8th Cir. 1970).

Ranger calls our attention to *Survey Aircraft Ltd. v. Stevenson,* 7 CCH Aviation Cases 17,703 (British Columbia Ct. of App.1961) in support of its contention that taking passengers aloft in a plane certified to carry only one person somehow nullified the "full force and effect" of the plane's airworthiness certificate. In *Survey Aircraft Ltd.,* the British Columbia court determined that the insurer had no obligation to provide coverage where a pilot had taken passengers aloft despite a clause in the certificate of airworthiness prohibiting the carrying of passengers. However, the language of the exclusion in the policy at issue in *Survey Aircraft Ltd.* is considerably different from the airworthiness certificate exclusion found in the Ranger policy. The Ranger policy reads:

> This policy does not apply: . . . 4. To any insured: . . . (b) who operates or permits the operation of the aircraft, while in flight, unless its airworthiness certificate is in full force and effect; . . .

The exclusion in *Survey Aircraft Ltd.* reads as follows:

> . . . policy of insurance does not apply. (j) . . . while the terms of the Civil Aeronautics Administration Airworthiness Certificate or Operations Record of insured aircraft *are violated* . . . . 7 CCH Aviation Cases at 17,707. [Emphasis added.]

We are not asked to decide if a "violation of the Airworthiness Certificate would invoke an exclusion such as that found in *Survey Aircraft Ltd.*[2] Thus, the decision

---

**2.** It is a necessary predicate to Ranger's argument that a violation of the "airworthiness certificate" occurred when a passenger was taken aloft in Lark 9502. This may be questionable. While it is true that carrying a passenger was contrary to the operating limitations for Lark 9502 then in effect and thus a violation of Federal Air Regulations (see 14 C.F.R. § 91.31), the offending conduct does not relate directly to the validity of the airworthiness certificate. The maximum weight and seating configuration of an aircraft are not prescribed by the terms of the Standard Airworthiness Certificate. They are treated as "operating limitations" under the Federal Air Regulations (see 14 C.F.R. § 23.1583). When an aircraft comes off the drawing boards for manufacture, the Federal Aviation Administration issues what is known as a "type certificate" for that particular type of aircraft (see 14 C.F.R. § 21.11, et seq.). The type certificate is considered to include the operating limitations for that aircraft (14 C.F.R. § 21.41). Under 14 C.F.R. § 23.1(b) each person applying for a type certificate must show compliance with applicable airworthiness standards set forth in Part 23 of 14 C.F.R., included in which are weight and passengers limitations. Once a type certificate is issued for a particular type aircraft, a standard airworthiness certificate for each newly manufactured aircraft may be issued under the type certificate upon presentation of a "statement of conformity" and appropriate FAA inspection. No person may operate an aircraft unless it has an appropriate and current airworthiness certificate (14 C.F.R. § 91.27(a)(1)). The airworthi-

is not instructive. In this case, the exclusion comes into play only if the airworthiness certificate is of no "force and effect." The carrying of a passenger by a student pilot would not bring this about because an airworthiness certificate is effective "as long as the maintenance, preventative maintenance, and alterations are performed [in accordance with the regulations]" or "unless sooner surrendered, suspended, revoked, or a termination date is otherwise established by the Administrator . . .". 14 C.F.R. § 21.181. None of these conditions occurred here.

For the foregoing reasons, we conclude that the judgment of the trial court is correct and it is therefore affirmed.

DONOFRIO, P. J., and OGG, J., concur.

ness certificate remains "effective" as long as the aircraft is properly maintained from a mechanical and structural point of view (see 14 C.F.R. § 21.181(a)(1)). Consequently, the operating limitations are found in the type certificate for a particular aircraft and govern its lawful operation, but they are not specifically terms of the airworthiness certificate. Thus, the airworthiness certificate is not necessarily placed in jeopardy on the occurrence of a violation of an operating limitation. Failure of a pilot to observe an operating limitation is a violation of the Federal Air Regulations (14 C.F.R. § 91.31(a)) for which sanctions are provided against him personally or against his certificate. See 49 United States Code Annotated (U.S.C.A.) § 1429(a) and 1471. In general, see 49 U.S.C.A. § 1301, et seq. and regulations enacted thereunder in Title 14, Code of Federal Regulations.