613 P.2d 283

**GULF INSURANCE COMPANY, a Missouri Corporation, Appellee,**

v.

**Ralph R. GRISHAM, Jr., personal representative of the Estate of Richard John Grisham, deceased; Ralph R. Grisham, Jr., and Doris Jean Grisham, husband and wife; Hazel A. Martinez and Kenneth Martinez, husband and wife; John Doe, personal representative of the Estate of Gary E. Martinez, deceased; John Roes I to X; ABC Corporations I to X, Appellants.**

**No. 14679.**

Supreme Court of Arizona, In Division.

June 17, 1980.

Beer & Kalyna, by Donald P. Roelke, Phoenix, for appellee.

Aboud & Aboud, by Michael J. Aboud, Tucson, for appellants.

CAMERON, Justice.

This is an appeal from the granting of defendant's motion for summary judgment. We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer two questions on appeal:

1. Was there an oral contract of insurance?

2. Did the trial court err in denying the plaintiff's objections as to the form of judgment and the motion to amend answer?

This being an appeal from the granting of a motion for summary judgment, we will review both the facts and the record in a light most favorable to the party against whom the summary judgment was taken. *Hegel v. O'Malley Insurance Co.*, 122 Ariz. 52, 593 P.2d 275 (1979); *Faris v. Doctors Hospital, Inc.*, 18 Ariz.App. 264, 501 P.2d 440 (1972); *Biondo v. General Motors Corporation*, 5 Ariz.App. 286, 425 P.2d 856 (1967). If there is any material issue of fact upon which reasonable people might reach a different conclusion, then the judgment must be reversed. *Dutch Inns of America, Inc. v. Horizon Corp.*, 18 Ariz.App. 116, 500 P.2d 901 (1972).

In May of 1974, Kenneth Martinez and Hazel A. Martinez purchased a Cessna 150 from Sawyer Aviation Company for their 17 year old son, Gary Martinez. Title to the aircraft was taken in Hazel Martinez' name. At the time of sale, Paul Sapp, Sales Manager for Sawyer Aviation, was asked by Kenneth Martinez if insurance on the aircraft could be obtained. Mr. Sapp contacted the Simis Insurance Agency and, on 21 May 1974, Richard Simis sent a letter to Kenneth Martinez informing him of the coverage for the aircraft. The letter stated as follows:

"We have this date bound coverage on your 1970 Cessna 150, N58668G.

"Enclosed are Pilot Record Forms to be completed by each pilot. Please complete the form and return to us. Your policy will be issued upon receipt of the applications.

"The coverages bound are $100,000.00/300,000.00 bodily injury, $100,000.00 property damage (*excluding passengers*), and $6,350.00 hull coverage.

"Our envelope is enclosed for the return of the pilot forms.

"Thank you for this opportunity to be of service to you." (emphasis added)

Mr. and Mrs. Martinez received this letter on or about 23 May 1974. Enclosed with the letter were pilot record forms which Gary Martinez completed and returned to Simis Insurance Agency.

Kenneth Martinez called Paul Sapp and told him that he expected the passengers to be covered, and in response Paul Sapp told Kenneth Martinez that the matter would be corrected. Neither Mr. or Mrs. Martinez contacted the Simis Insurance Agency, or Gulf, International Aviation Underwriters, Inc., but instead, according to Kenneth's testimony, relied upon Paul Sapp to request coverage in addition to that described in the letter of 21 May.

Richard Simis testified that, on 10 July, the policy and invoice were mailed to Mr. Martinez. The policy specifically excluded passengers while riding in the airplane piloted by a student pilot. Although Kenneth denied receiving the policy, the amount stated on the invoice as the premium was paid by the Martinezes on 7 August 1974.

On 14 August 1974, Gary Martinez, 17, a licensed student pilot, took Richard Grisham, 18, for a flight in the Cessna 150 aircraft. The airplane crashed and both men died. The parents of Richard Grisham brought suit against the Martinezes. The plaintiff insurance company represented the Martinezes under reservation rights and brought this separate action for declaratory judgment seeking to relieve the insurance company of any responsibility to provide a defense. Depositions of the Martinezes were taken and affidavits filed by Mr. Sapp and Mr. Simis. The court granted the plaintiff insurance company's motion for summary judgment, and the defendants appeal.

## WAS THERE AN ORAL CONTRACT OF INSURANCE?

It is apparent that the written contract of insurance did not cover Richard Grisham as he was a passenger specifically excluded. If there is coverage, it must be pursuant to an oral contract of insurance.

The general rule is that an oral contract of insurance is valid and enforceable. 12 Appleman Insurance Law and Practice, § 7191, p. 254. However, there must be " * * * a showing that the parties have agreed on all the essential terms of the contract, including the subject matter, the risk insured against, the time of commencement and duration of the risk, the amount of insurance and the amount of the premium. See 43 Am.Jur.2d, Insurance, § 202 at 258." *Ranger Insurance Company v. Phillips*, 25 Ariz.App. 426, 429, 544 P.2d 250, 253 (1976).

For there to have been an oral contract between Martinez and plaintiff Gulf Insurance Company, there must have been an agreement between Gulf's agent Simis Insurance Agency and Martinez. *Ranger*, supra. Defendants admit that there was no contract between the Martinezes and Simis.

Defendants in their brief stated:

"It is undisputed that the MARTINEZ' never had any personal contact, either written or oral, with the SIMIS INSURANCE AGENCY or GULF INSURANCE COMPANY prior to the plane crash; all discussions or negotiations went through PAUL SAPP.

"It is also undisputed that SAPP was not on the payroll of either SIMIS AGENCY or GULF INSURANCE, but he had worked similar transactions on other occasions in the past."

And Kenneth Martinez testified:

"Q  Had you, in fact, at any time before the accident been in touch with the Simis Insurance Agency?

"A  I never even knew there was a Simis Insurance Agency until well after the accident.

"Q Well, you did get a letter from them in May?

"A Right.

"Q But you just didn't notice what the name was?

"A No."

It is agreed that there was no oral contract between the Simis Insurance Agency and Martinez. The Martinezes, however, claim they relied upon their dealings with Sapp, who they believed to be Simis' authorized agent. Other than the receipt of the letter and invoice from Simis to Martinez as a result of the conversation between Martinez and Sapp, the only testimony bearing on this subject was given by Kenneth Martinez:

"Q Did you ever talk with anyone who you believed to be working for the Gulf Insurance Company before the accident?

"A Before the accident?

"Q Yes.

"A Paul Sapp.

"Q What made you think that he worked for the Gulf Insurance Company?

"A Well, I assumed by the conversation between him and me about insurance that he must have got some kind of kick back for pointing the customers in their direction.

"Q What is it that he said that led you to believe that?

"A Nothing. He just asked me about the insurance, if I wanted him to get it for me.

"Q You never heard of Gulf Insurance Company before that, I take it?

"A No.

"Q Other than your conversation with Sapp, did anybody, any adjuster or anybody else, tell you that Sapp was working for the insurance company?

"A No."

In addition, Sapp had acted for the Martinezes to acquire their initial policy from Simis.

■ There are two main types of agency, actual (express) and ostensible (apparent). If there is evidence that the principal has delegated authority by oral or written words which authorize him to do a certain act or series of acts, then the authority of the agent is express. *Canyon State Canners v. Hooks*, 74 Ariz. 70, 243 P.2d 1023 (1952). If there is no such express authority, or if intent to create such authority cannot be implied from the actions of the principal and agent, then the next question is whether there is apparent agency. We have said:

> "The ostensible agent is one where the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent. (citations omitted)" *Canyon State Canners*, supra, 74 Ariz. at 73, 243 P.2d at 1025.

■ Keeping in mind that the party asserting the agency relationship has the burden of proving the agency, *Salt River Valley Water Users' Ass'n v. Giglio*, 113 Ariz. 190, 549 P.2d 162 (1976), we note that the Martinezes have not shown Sapp to fall within either of the above-mentioned types of agency. They have not shown evidence of a written or oral agreement between Simis and Sapp or any evidence that Simis, as a principal, acted in any way so as to induce Martinez to believe Sapp was Simis' agent. All the Martinezes have shown is that Sapp's actions and representations led them to believe he was an authorized agent. We do not believe liability should be found on the basis of such a belief. Were we to allow an unauthorized agent to bind an unknown principal to liability such as is present in this case, we would encourage fraud and injustice in the future, as anyone who represented themselves as agents could bind completely innocent principals. We therefore find no material issue of fact which would require us to set aside the granting of the motion for summary judgment.

Defendants, however, rely heavily on *Ranger Insurance Company v. Phillips*, supra, which has a fact situation close to the case at bar. In *Ranger*, the insured talked personally to a person who was an authorized agent of the insurance company:

"* * * Phillips testified that student instruction was one of the services he provided and that he would not have considered insurance without such coverage. Initially he contacted his own insurance agent, Sabatelli Insurance Agency. Not being familiar with aircraft insurance, Sabatelli contacted John 'Sandy' Sanderson who was employed by American Underwriters Agencies, Inc. * * * Testimony at the trial revealed that Phillips spoke directly with Sanderson and told him the coverage he wanted, which included student pilots. Accordingly, Sanderson assured him he was covered by Ranger. * * * We find that this evidence was sufficient for the trial court to find that student pilot coverage had been sought by Phillips and contracted for by Ranger through its agents." *Ranger Insurance Company v. Phillips*, supra, 25 Ariz.App. at 429, 544 P.2d at 253.

Defendant's reliance on *Ranger Insurance Company v. Phillips*, supra, is misplaced as that case involved an authorized agent and this does not. The two cases are distinguishable. We find no error.

### MOTION TO AMEND

After the court granted the motion for summary judgment, the defendants objected to the form of judgment asking that it be limited judgment as to the written contract and that it not purport to rule on the issue of the oral contract. The defendants also moved to amend the answer to allow the defendants to plead the oral contract.

Motions for leave to amend should be "freely given when justice requires." Rule 15(a), Arizona Rules of Civil Procedure, 16 A.R.S.; *Cagle v. Carr*, 101 Ariz. 225, 418 P.2d 381 (1966). We note, however, that Rule 56(e), Arizona Rules of Civil Procedure, 16 A.R.S., on summary judgments, provides:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In the instant case, neither motion contained any new facts by "affidavits or otherwise," which would have shown a "genuine issue for trial." Based upon the pleadings, the depositions and the affidavits, it is evident that the court, in ruling as it did, found there was no contract to insure passengers, either written or oral. The bare motion to amend the objection to the form of judgment provided nothing new in the way of evidence or pleadings which would have justified the trial court in granting the relief requested. We find no error.

Affirmed.

STRUCKMEYER, C. J., and HAYS, J., concur.